686 A.2d 1330

**Fulvio FULCO, Appellant,**

v.

**Kenneth Ray SHAFFER, Satterlee Leasing, Inc. and William G. Satterlee & Sons, Inc.**

Superior Court of Pennsylvania.

Argued Oct. 9, 1996.

Filed Dec. 31, 1996.

---

Nicholas T. Lacovara, Williamstown, NJ, for appellant.

Jennifer M. Kirschler, Pittsburgh, for appellees.

Before POPOVICH, FORD ELLIOTT and HESTER, JJ.

FORD ELLIOTT, Judge:

Appellant comes before us challenging the granting of appellees' motion for judgment on the pleadings. The pertinent issue upon which said motion was granted was appellees' assertion that appellant's claim was barred by the statute of

limitations. We find that the trial court erred in granting judgment on the pleadings and will reverse.

The argument on appeal concerns the procedural rather than substantive facts of this case. Appellant's cause of action arose from a vehicular accident that occurred on February 17, 1993, in Clearfield County. At that time, appellant's vehicle collided with a vehicle operated by appellee Kenneth Ray Shaffer. Appellee Shaffer was alleged to have been operating the vehicle in the course of his employment for appellee William G. Satterlee & Sons, Inc. The vehicle appellee Shaffer was operating was allegedly owned by appellee Satterlee Leasing, Inc. and/or appellee William G. Satterlee & Sons, Inc. Appellant is a resident of Toronto, Ontario, Canada. Appellee Shaffer resides in Jefferson County. The Satterlee appellees are located in Indiana County.

Appellant filed his lawsuit in Clearfield County on February 10, 1995, approximately one week before the appropriate two-year statute of limitations [1] otherwise would have run. Appellant then attempted to serve appellees by mailing copies of the Complaint by first class mail on March 1, 1995.[2] Simultaneously with this attempt to effect service by mail, appellant also attempted to obtain service by the sheriffs of appellees' respective counties. On March 1 and 2, 1995, appellant's counsel sent copies of the Complaint to the sheriffs of Indiana and Jefferson Counties by United Parcel Service together with checks in the amounts of $65 and $75 respectively and a request for formal service.

Appellant was apparently unaware that our Rules of Civil Procedure require deputized sheriff's service where service is to be made in a county other than the county in which the action was commenced.[3] See Pa.R.C.P. 400(d), 42 Pa.C.S.A. On March 10, 1995, the sheriff of Clearfield County notified appellant that the Complaint was ready to be served in

1. 42 Pa.C.S.A. § 5524.

2. At no point in the record do appellees ever deny that they received these mailed Complaints.

3. Appellant retained counsel from New Jersey to prosecute his cause of action. This may explain the unfamiliarity with Pennsylvania's Rules.

Indiana County, but that a bank check was required to deputize the Indiana County sheriff. On March 16, 1995, the sheriff of Jefferson County returned the Complaint to appellant advising that formal service had to be effectuated through deputization by the Clearfield County Sheriff.

Thereafter, on April 3, 1995, appellant sent a praecipe to reinstate the Complaint to the prothonotary of Clearfield County together with appropriate bank checks to effect deputization and service in the appropriate counties. Unfortunately, appellant's counsel neglected to sign the praecipe, and it was returned in May of 1995 without having been acted upon. Finally, after a delay of approximately three months, on September 8, 1995, appellant again praeciped to have the Complaint reinstated. On this occasion formal service on the appellees was finally effected on September 12 and 14, 1995.

We further note that appellant alleges that between the last unsuccessful service effort in May and the ultimately successful effort in September, there was further contact between the parties in the form of discovery between appellant and appellees' insurers.

Ultimately, appellees sought and obtained judgment on the pleadings. The basis for appellees' motion for judgment on the pleadings as well as for the trial court rendering such judgment was that appellant ran afoul of the supreme court's pronouncement in *Lamp v. Heyman*, 469 Pa. 465, 366 A.2d 882 (1976), which essentially ruled that in order to avoid the barring of one's claim by the statute of limitations, not only must the writ of summons or complaint be timely filed, but also the party must take reasonable steps to insure that the writ or complaint is promptly served. Whether or not appellant's actions constituted a transgression under *Lamp v. Heyman* forms the only issue on appeal.

Preliminarily, we note our scope of review:

Our scope of review of a trial court's granting of a motion for judgment on the pleadings is plenary. *McAllister v. Millville Mutual Insurance Co.*, 433 Pa.Super. 330, 640 A.2d 1283 (1994) (citation omitted). An appellate court will

apply the same standard applied by the trial court. *Id.* A court should grant a motion for judgment on the pleadings where the pleadings demonstrate that no genuine issue of fact exists, and that the moving party is entitled to judgment as a matter of law. *Id.*

> ... [A] trial court must confine its consideration to the pleadings and relevant documents and accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed. The court may grant judgment on the pleadings only where the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Id.* [640 A.2d] at 1285. We will reverse a trial court's grant of judgment on the pleadings only where a clear error of law has been committed or where there were facts disclosed by the pleadings which should have been resolved by the jury. *Flatley by Flatley v. Penman,* 429 Pa.Super. 517, 632 A.2d 1342 (1993), *allocatur denied,* 537 Pa. 620, 641 A.2d 586 (1994).

*Fowkes v. Shoemaker,* 443 Pa.Super. 343, 661 A.2d 877, 878 (1995), *allocatur denied,* 544 Pa. 609, 674 A.2d 1072 (1996).

As the issue before us directly concerns our supreme court's decision in *Lamp v. Heyman, supra,* a review of that case is in order. The cause of action in *Lamp v. Heyman* was a personal injury lawsuit arising out of an automobile accident. The accident occurred September 1, 1967, and plaintiff/appellant initiated suit by filing a writ of summons [4] on August 28, 1969, just days before the appropriate two-year statute of limitations was to expire. For unknown reasons, appellant's counsel instructed the prothonotary to issue but hold the writ. Thus, the writ was not served. Service was delayed in the

---

**4.** It is inconsequential to the issue at hand that the suit in *Lamp v. Heyman* was commenced by writ of summons rather than by complaint as either method is appropriate. *See* Pa.R.C.P. 1007. Further, the service requirements of *Lamp v. Heyman* have been applied in cases involving complaints. *See Schriver v. Mazziotti,* 432 Pa.Super. 276, 638 A.2d 224 (1994), *appeal discontinued,* 539 Pa. 638, 650 A.2d 52 (1994).

case for almost a full year until June 19, 1970, when service was finally effected. The defendant/appellee objected, arguing that appellant's "issue and hold" instructions rendered the original writ a nullity as to its court made the following commentary and ruling:

> We note that it has become a relatively common practice throughout the Commonwealth for attorneys to file a praecipe with the prothonotary to toll the statute of limitations but then, whether because settlement negotiations are in progress or because more time is needed to prepare the case, to delay or prevent service upon the defendant....
>
> ....
>
> Nevertheless, we now conclude that there is too much potential for abuse in a rule which permits a plaintiff to keep an action alive without proper notice to a defendant merely by filing a praecipe for a writ of summons and then having the writ reissued in a timely fashion without attempting to effectuate service. In addition, we find that such a rule is inconsistent with the policy underlying statutes of limitation of avoiding stale claims, and with that underlying our court rules of making the processes of justice as speedy and efficient as possible.... Our purpose is to avoid the situation in which a plaintiff can bring an action, but, by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations.
>
> Accordingly, pursuant to our supervisory power over Pennsylvania courts, we rule that henceforth, i.e., in actions instituted subsequent to the date of this decision, a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion....

*Lamp v. Heyman* at 472, 477, 366 A.2d at 886, 888–89 (footnotes and citations omitted).

*Lamp v. Heyman* has spawned many progeny, several of which have been recited by the parties. Importantly, it has been interpreted therein as requiring a good faith effort on the part of a plaintiff in securing service of notice. *See Farinacci v. Beaver County Industrial Development,* 510 Pa. 589, 511 A.2d 757 (1986).

In *Farinacci,* the plaintiff filed his personal injury lawsuit on the last day possible under the statute of limitations, February 2, 1982. Counsel paid the prothonotary for issuance of the writ, and the writ was issued the following day. Although counsel intended to immediately obtain sheriff's service, he misplaced the case file for eight or nine days. Once the file was found, counsel forgot to effectuate service of the writ. Finally, the writ was reissued March 11, 1982, and was served approximately two weeks later. In upholding the trial court's dismissal of the suit, the supreme court noted that while the eight or nine-day delay due to misplacing the file was not inconsistent with a good faith effort, the unexplained four-week delay thereafter, in which counsel claimed he forgot about service, was not indicative of good faith.[5]

Of all of the progeny which have descended from *Lamp v. Heyman,* however, appellant grounds his entire argument on the decision of this court in *Leidich v. Franklin,* 394 Pa.Super. 302, 575 A.2d 914 (1990), *appeal denied,* 526 Pa. 636, 584 A.2d 319 (1990). As we shall see, *Leidich* does contain one very important distinction from the rest of these cases.

In *Leidich,* suit was commenced by the filing of a praecipe for a writ of summons on January 4, 1988, based upon an automobile accident which occurred April 4, 1986. The appropriate statute of limitations expired as of April 4, 1988. The

---

5. We note that *Farinacci* was a narrow, 4–3 decision that drew a vigorous dissent by Justice Zappala. Justice Zappala argued that *Lamp v. Heyman* only required a plaintiff to act reasonably, not in good faith. Further, Justice Zappala noted that the defendants were aware of plaintiff's claim within a year prior to the commencement of legal proceedings. Finally, the dissent indicated that there was no finding of prejudice suffered by defendant. Nevertheless, *Farinacci* remains as precedent to us. *Farinacci* effectively requires that mere unexplained neglect prevents the finding of a good faith effort.

plaintiff attempted to obtain service by sending the writ to the defendants by first class mail. This was an improper method of service under the Rules of Civil Procedure. *See* Pa. R.C.P. 400 *et seq.,* 42 Pa.C.S.A. Thereafter, settlement negotiations occurred between plaintiff and defendant's insurer. After the passage of April 4, 1988, and the expiration of the statute of limitations, the defendant withdrew from settlement negotiations "on technical grounds involving alleged deficiencies in the service of the Writ of Summons." *Leidich* at 305, 575 A.2d at 915, *quoting* Plaintiff's Answer to New Matter With Additional New Matter. On May 17, 1988, plaintiff filed a praecipe to reissue the writ and plaintiff obtained sheriff's service the same day. Ultimately, the trial court granted the defendant's motion for judgment on the pleadings on the basis that the suit was barred by the statute of limitations under the principles announced in *Lamp v. Heyman.*

This court reversed the trial court in *Leidich*. In forming its analysis, the *Leidich* court reviewed the case law on this issue and concluded:

What is to be gleaned from *Lamp* and its progeny is that: (1) one's 'good faith' effort to notify a defendant of the institution of a lawsuit is to be assessed on a case-by-case basis; and (2) the thrust of all inquiry is one of whether a plaintiff engaged in a 'course of conduct' forestalling the legal machinery put in motion by his/her filings. See *Lamp,* supra; *Jacob v. New Kensington Y.M.C.A.,* 312 Pa.Super. 533, 459 A.2d 350 (1983). Further, we do not read *Lamp,* and the cases interpreting and applying it, to espouse a mechanical approach to the 'good faith' effort rule such that it allows for no exceptions in the face of an explanation and/or conduct which evidences an unintended deviation from the 'notice' requirement.

*Leidich* at 312, 575 A.2d at 918 (some citations omitted). The *Leidich* court went on to find that the plaintiff/appellant therein had not engaged in a course of conduct forestalling the legal machinery set in motion. The court observed that the defendant/appellee had been put on notice that a suit was filed by the attempted, albeit defective, service by mail. The court

further noted that discovery was underway between the plaintiff/appellant and defendant/appellee's insurer. The court found that no substantial rights of the defendant/appellee were affected by the defective service, nor were any allegations of prejudice raised. Ultimately, the court stated:

> ... we find that the defect in service has not affected any substantial rights of the defendants, nor is there any allegation that the defendants were prejudiced by the manner in which they received notice of the lawsuit. See Justice ZAPPALA's Dissenting Opinion in *Farinacci*, supra. More importantly, consistent with *Lamp*'s teachings, we cannot in good conscience equate the plaintiff's attorney's actions with a 'course of conduct which serve[d] to stall' the machinery of justice. For example, once the writ was mailed to the defendants, communication with and the submission of documents to their liability carrier began. Even the initial stages of discovery (notice of deposing the defendants) were underway before being discontinued at the behest of the defendants' counsel.
>
> Thus, we do not view the plaintiff's actions as a 'course of conduct' to be condemned under the guise of *Lamp* (an 'issue & hold' case). . . .

*Leidich* at 313, 575 A.2d at 919–20.

Instantly, we agree with appellant that the fact situation presently before us has much in common with *Leidich*. Appellant's repeated, albeit mistaken, attempts to obtain sheriff's service in the various counties involved actually bespeaks of some diligence rather than a course of conduct intended to forestall. Furthermore, not only did appellant attempt to effect sheriff's service from the very start, but he also attempted to effect service by mail. While we are somewhat troubled by the three-month-long hiatus in appellant's attempts to effect sheriff's service (from sometime in May of 1995 until mid-September 1995), we do take into consideration the fact that appellant was engaging in limited discovery with appellees' insurer during the summer. All in all, we find that appellant's conduct did not amount to a course of conduct designed to forestall this case. Most importantly, because of

the mailed Complaints appellees were aware actually, if not formally, that a lawsuit had been commenced and was proceeding against them. There was no unfair surprise for them after the statute had run.

This last factor distinguishes both the instant case and *Leidich* from the host of other cases cited for support by appellees. For instance, in *Green v. Vinglas,* 431 Pa.Super. 58, 635 A.2d 1070 (1993), *appeal denied,* 540 Pa. 583, 655 A.2d 515 (1995), we found the principles of *Lamp v. Heyman* to have been violated where the attorney for the plaintiff mistakenly tendered insufficient money for sheriff's service because she was unaware that deputized service was necessary. Although that occurred instantly also, in *Green* there was no other notification given to the defendant, by mail or otherwise. In *Cahill v. Schults,* 434 Pa.Super. 332, 643 A.2d 121 (1994), there was a mailing of the good faith effort on the plaintiff's part. Last, we note that *Schriver v. Mazziotti, supra,* recognized the distinction we make:

> Both *Leidich* and *Hoeke* [6] indicate that when the plaintiff attempts to give notice to the defendant, and does so, albeit in a technically defective fashion, and the plaintiff has not engaged in conduct to forestall 'the machinery of justice', our court's [sic] will find that the statute of limitations has been tolled and allow the action to proceed.
>
> In the instant case, however, appellant never sent notice, technically defective or otherwise, to appellee within the limitations period....

*Schriver* at 282–83, 638 A.2d at 227. Because of this distinction, we believe that the trial court erred in dismissing this action by granting the motion for judgment on the pleadings.

Accordingly, the order entered March 22, 1996, is hereby vacated, and this matter is remanded for further proceedings. Jurisdiction relinquished.

---

6. *Hoeke v. Mercy Hospital,* 254 Pa.Super. 520, 386 A.2d 71 (1978). We have not cited *Hoeke* because it is a plurality opinion.