## Risha v. The Farmers Fire Insurance Agency

C.P. of Fayette County, nos. 148 of 1999 G.D. and 2311 of 1998 G.D.

*Joseph George Sr.,* for plaintiffs.
*S. Asher Winikoff,* for defendants.

WARMAN, *J.,* May 1, 2001—Presently before this court for disposition are two motions for summary judgment filed on behalf of defendant, Farmers Fire Insur-

ance Company. In the motions, defendant avers that the plaintiffs, Jesse and Joanne Risha, and the Bortz Corporation, are unable to adduce sufficient evidence on issues essential to their cases, on which they bear the burden of proof, such that a jury could render a verdict in their favor. Therefore, defendant argues that it is entitled to judgment as a matter of law.

After oral argument, full consideration of the record, applicable law, briefs and submissions of counsel, and for reasons more fully discussed herein, defendant's motion for summary judgment to plaintiffs Jesse Risha and Joanne Risha's complaint is Granted in part and Denied in part. Defendant's motion for summary judgment to plaintiff Bortz' complaint is Denied.

## BACKGROUND

This matter arises from a denial of insurance proceeds on a fire insurance policy issued to plaintiffs, Jesse and Joanne Risha, by Farmers Fire Insurance Company of York, Pennsylvania. On August 2, 1994, Jesse and Joanne Risha purchased property located at 25 North Mount Vernon Avenue, Uniontown, Fayette County, Pennsylvania, from the Bortz Corporation for $180,000. On the same date, the Rishas mortgaged the property to Bortz in the amount of $170,000. As part of the purchase money mortgage, the Rishas were required to "provide, renew, and keep alive by paying the necessary premiums and charges thereon such policies of hazard and liability insurance" and to "promptly submit to mortgagee Bortz evidence of the due and punctual payment of the foregoing charges." Said mortgage is recorded in the office of

the Recorder of Deeds of Fayette County, Pennsylvania, in Record Book 1406 at page 80. By virtue of the mortgage, Bortz is a first lienholder on the property.

The Rishas contacted the Fike Insurance Agency with the intention of acquiring the necessary fire insurance. The Fike Insurance Agency supplied the Rishas with an application for fire insurance from the defendant. The defendant's application contained a two-page mandatory form entitled "State of Pennsylvania Anti-Arson Application." Question number seven of the application asked whether there were any losses during the past five years exceeding $1,000 in damage to this particular property or any other property owned by the applicant. The form indicates a negative response despite the fact that less than a year before the Rishas suffered a $400,000 loss and successfully recovered.[1]

Although both Jesse and Joanne Risha were insureds, only Jesse Risha signed the anti-arson application. On the application, Bortz was listed as "mortgagee." Thereafter, on or about February 22, 1995, defendant issued a policy of fire insurance at DW-603164. The Rishas were the sole insureds on the policy and Bortz was the mort-

---

1. In 1993, Jesse and Joanne Risha owned the Mount Vernon Inn located in Uniontown, Fayette County, Pennsylvania. The Mount Vernon Inn was insured under a fire insurance policy with Donegal Mutual Insurance Company. Part of the property insured under the policy was an outbuilding known as the "carriage house." In 1993, the carriage house was rendered a complete loss by fire and water damage. The Rishas made a claim for insurance coverage to Donegal as a result of the destruction of the carriage house. In late 1993, the Rishas received approximately $400,000 from their insurance carrier as a result of the fire.

gagee. Said policy of insurance provided coverage in the amount of $180,000.

In February of 1998, the property located at 25 North Mount Vernon Avenue was damaged by fire. As a result of the fire, the Rishas presented a claim to defendant. After receiving the Rishas' claim, the defendant proceeded to make an investigation. During the investigation, the defendant took a statement under oath from Jesse Risha wherein he acknowledged the occurrence of the 1993 fire and the subsequent collection of $400,000 in insurance proceeds.

Upon discovery of the 1993 fire, and subsequent to the collection of the $400,000, defendant denied the Rishas' claim pursuant to 40 Pa.C.S. §1615.7(b). 40 Pa.C.S. §1615.7(b) states that, "any anti-arson application required by this Act shall be deemed a material part of the insurance policy to which the application pertains. A material misrepresentation shall be deemed grounds to void the insurance policy." Also, implicit in the denial was the denial of insurance coverage to Bortz. Farmers declared the policy void and of no effect.

Thereafter, on or about November 23, 1998, based on defendant's refusal to pay, Bortz commenced an action against defendant at no. 2311 of 1998 in the Court of Common Pleas of Fayette County, Pennsylvania, alleging breach of contract and bad faith denial of insurance benefits pursuant to 42 Pa.C.S. §8371. On or about January 22, 1999, the Rishas commenced a suit against defendant in the Court of Common Pleas of Fayette County, Pennsylvania, at no. 148 of 1999 seeking damages for breach of contract and bad faith pursuant to 42 Pa.C.S.

§8371. The Rishas also brought suit against Russell Fike and the Fike Insurance Agency at no. 287 of 1999 in the Court of Common Pleas of Fayette County, Pennsylvania. By order of court, the three actions were consolidated for discovery purposes only. Following various pretrial motions, on February 14, 2001, defendant filed the motions for summary judgment now before this court at nos. 148 of 1999 G.D., and 2311 of 1998 G.D. On March 30, 2001, we heard oral argument thereon.

## DISCUSSION

One purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital,* 753 A.2d 829 (Pa. Super. 2000). In a motion for summary judgment, the non-moving party must adduce sufficient evidence on issues essential to its case on which he bears the burden of proof such that a jury could return a verdict in its favor. *Ertel v. Patriot-News Company,* 544 Pa. 93, 674 A.2d 1038 (1996), *reargument denied, certiorari denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996); *O'Rourke v. Pennsylvania Department of Corrections,* 730 A.2d 1039 (Pa. Commw. 1999).

In passing on a motion for summary judgment, the court must examine the record in a light most favorable to the non-movant and resolve any doubt in his favor. *Swartley v. Hoffner,* 734 A.2d 915 (Pa. Super. 1999), *allocatur denied,* 561 Pa. 660, 747 A.2d 902 (1999); *Doe v. Philadelphia Community Health Alternatives AIDS Task Force,* 745 A.2d 25 (Pa. Super. 2000), *allocatur*

*granted in part,* 563 Pa. 125, 758 A.2d 166 (2000), *affirmed,* 564 Pa. 264, 767 A.2d 548 (2001). With the above rules in mind, we will first consider defendant's motion for summary judgment to the Rishas' complaint.

Defendant argues that it is entitled to judgment as a matter of law to the Rishas' breach of contract claim because based on 40 P.S. §1615.7(b), established case law, and Jesse Risha's material misrepresentations on the anti-arson application, it rightfully denied plaintiffs' claims and determined that the policy issued to the Rishas was void ab initio. Defendant further argues that it is entitled to judgment as a matter of law to the Rishas' bad faith claim because since the insurance policy was void ab initio, the Rishas were not "insureds" at the time of the loss, and consequently cannot maintain a bad faith claim pursuant to 42 Pa.C.S. §8371. Defendant argues in the alternative that the Rishas cannot maintain a bad faith claim because it acted in a reasonable manner in denying their claim given the express provisions contained in the anti-arson application law.

We will first consider the defendant's argument that the Rishas' breach of contract claim must fail because the insurance policy was void ab initio. Initially, we note that a breach of contract claim must be established by alleging: "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." See *Reformed Church of the Ascension v. Theodore Hooven and Sons Inc.,* 764 A.2d 1106, 1109 (Pa. Super. 2000) (quoting *CoreStates Bank N.A. v. Cutillo,* 723 A.2d 1053 (Pa. Super. 1999)).

Pursuant to the terms of the Pennsylvania Anti-Arson Application Law, 40 P.S. §1615.1 et seq., an anti-arson application must be completed prior to issuance of a permanent policy of insurance. Pa. C.S. §1615.7(a) provides in pertinent part as follows:

"No insurer may enter into a permanent contract to insure any building . . . against the peril of fire . . . unless such insurer first receives an anti-arson application signed and affirmed by the insured. . . . Each anti-arson application shall contain the following language:

"I (we) certify that all information contained herein is true and correct to the best of my (our) knowledge and belief. Signed under the pains and penalties of perjury." 40 P.S. §1615.7(a).

40 P.S. §1615.7(b) provides:

"An anti-arson application required by this Act shall be deemed a material part of the insurance policy to which the application pertains. A material misrepresentation shall be deemed grounds to void the insurance policy." 40 P.S. §1615(b).

In addition, an applicant for insurance owes a duty to make full disclosure of all things material to the risk. *Rohm & Haas Company v. Continental Casualty Company,* 732 A.2d 1236 (Pa. Super. 1999), *allocatur granted,* 562 Pa. 673, 753 A.2d 820 (2000). Information is said to be material for purposes of allowing an insurer to rescind a policy if knowledge or ignorance of it would naturally influence the judgment of the insurer in issuing the policy, in estimating the degree and character of the risk, or in fixing the premium rate. See *A. G. Allebach Inc. v. Hurley,* 373 Pa. Super. 41, 540 A.2d 289 (1988).

See also, *Rohm & Haas Company v. Continental Casualty Company,* 732 A.2d 1236 (Pa. Super. 1999), *allocatur granted,* 562 Pa. 673, 753 A.2d 820 (2000).

Insurer claiming that a policy is void ab initio has the burden of proving fraud by clear and convincing evidence; the insurer must prove that the insured knowingly made false statements on the application and knowingly failed to disclose information which was material to the risk against which the insured sought to be protected. *Id.* In order to show a policy is void ab initio on the basis of fraud, the insurer must prove that the intent to deceive was deliberate. *Id.* See also, *Grimes v. Prudential Insurance Company of America,* 401 Pa. Super. 245, 585 A.2d 29 (1991).

The clear and convincing standard of proof is sufficiently met if evidence presented was so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction without hesitancy, of the truth of the precise facts in issue. *Id.* Mere mistakes, even of material information, cannot work to void a contract of insurance if there was no deliberate intent to deceive. *Id. Rohm & Haas Company v. Continental Casualty Company,* 732 A.2d 1236 (Pa. Super. 1999), *allocatur granted,* 562 Pa. 673, 753 A.2d 820 (2000).

Question number seven of the anti-arson application signed by Jesse Risha asked:

"Have there been any losses during the past five years exceeding $1,000 in damage to this property or to any property in which anyone with a financial interest in this property had an equity interest or held a mortgage (except federal or state chartered lending institutions)?"

A negative answer in response to question number seven is contained on the form. However, it was less than a year before that the Rishas suffered a $400,000 loss. Further, his deposition testimony and statement given under oath indicate that the answer to question number seven was not accurate.

"Q. When you said that question number seven was not the . . . not accurate, that would be to you?

"A. Right.

"Q. Number seven isn't right, correct?

"A. Everything's correct except number seven." Statement under oath, Jesse Risha, pp. 136-37.

"Q. And you did in fact have prior claims?

"A. Right.

"Q. And one of those prior claims was a claim for a fire at the Mt. Vernon Inn which did a significant amount of damage?

"A. Right.

"Q. And the question asks whether you've had any losses in five years exceeding a thousand dollars and five years at least from the application would be from February 11, 1990, to February 11, 1995. Would the fire at the Mt. Vernon have occurred at that time, in that time period?

"A. Yes.

"Q. And, is it true that there was more than a thousand dollars involved in that fire?

"A. Yes." D.T., Jesse Risha, p. 21.

Accordingly, because every answer on the anti-arson application is deemed to be a material part of the insurance policy, and because Jesse Risha admitted in both his deposition testimony and statement under oath that the answer to question number seven on the anti-arson application was not correct, his negative answer thereto was clearly a material misrepresentation. Further, pursuant to 40 P.S. §1615.7(b), a material misrepresentation is deemed grounds to void the policy. Accordingly, as to Jesse Risha, based on the foregoing, we believe that defendant properly voided the policy of insurance and because there are no genuine issues of material fact defendant is entitled to judgment as a matter of law to Jesse Risha's breach of contract claim. We will later discuss defendant's argument to Joanne Risha's breach of contract claim.

With regard to Jesse Risha's bad faith claim brought pursuant to the Pennsylvania Bad Faith Statute, 42 Pa. C.S. §8371, defendant claims that because the statute requires a showing of bad faith towards an "insured," and because Jesse Risha's false answer to question number seven on the anti-arson application was a material misrepresentation, it acted in a justifiably reasonable manner in rescinding and voiding the policy. Therefore, defendant argues, since Jesse Risha was not an "insured," denial of his claim was not a "bad faith" denial under the statute.

The purpose of the Pennsylvania Bad Faith Statute which authorizes action on an insurance policy is to provide a statutory remedy to the insured when the insurer denies benefits in bad faith; the legislature intended to protect the insured from bad faith denial of coverage.

*General Accident Insurance v. Federal Kemper Insurance Company,* 452 Pa. Super. 581, 682 A.2d 819 (1996).

The elements of the statutory cause of action for bad faith are that the insurer (1) lacked a reasonable basis for denying benefits; and (2) knew or recklessly disregarded its lack of a reasonable basis. *Booze v. Allstate Insurance Company,* 750 A.2d 877 (Pa. Super. 2000), *allocatur denied,* 564 Pa. 722, 766 A.2d 1242 (2000). See also, *Adamski v. Allstate Insurance Company,* 738 A.2d 1033 (Pa. Super. 1999), *allocatur denied,* 563 Pa. 663, 759 A.2d 381 (2000). Mere negligence or bad judgment by insurer in refusing to pay claim is not "bad faith." *O'Donnell ex rel. Mitro v. Allstate Insurance Company,* 734 A.2d 901 (Pa. Super. 1999). Bad faith by the insurer is any frivolous or unfounded refusal to pay proceeds of the policy, the refusal need not be fraudulent, but bad faith imports a dishonest purpose and means a breach of a known duty through some motive of self-interest or ill will. *Adamski v. Allstate Insurance Company,* 738 A.2d 1033 (Pa. Super. 1999), *allocatur denied,* 563 Pa. 663, 759 A.2d 381 (2000). A bad faith action is neither related to nor dependent on the underlying contract claim against the insurer. *Id.*

A statement known to be false when made is presumptively fraudulent. *Shafer v. John Hancock Mutual Life Insurance Company,* 410 Pa. 394, 189 A.2d 234 (1963). And, an individual who signs a blank form is not relieved of the responsibility for the accuracy of the averments contained therein. *Kearns v. Philadelphia Life Insurance Company,* 401 Pa. Super. 292, 585 A.2d 53 (1991), *allocatur denied,* 528 Pa. 631, 598 A.2d 284 (1991). Further, absent fraud, a party's failure to read a

contract before signing it is an unavailing excuse or defense, it is considered mere supine negligence. *Germantown Savings Bank v. Talacki,* 441 Pa. Super. 513, 657 A.2d 1285 (1995). Therefore, Jesse Risha cannot avoid responsibility for the misrepresentation contained on the anti-arson application by claiming that he did not read or did not complete the application.[2]

Here, based on Jesse Risha's admissions in both his deposition testimony and statement given under oath, which are both included in the record, we believe that defendant had sufficient grounds to establish a reasonable basis upon which to deny Jesse Rishas's claim. We believe that clear and convincing evidence exists to establish that Jesse Risha's material misrepresentation with respect to question number seven was fraudulent. Accordingly, we find that defendant is entitled to judgment as a matter of law to Jesse Risha's bad faith claim.

We will next consider defendant's argument that it is entitled to judgment as a matter of law to Joanne Risha's breach of contract claim. Defendant argues that Jesse Risha's false answer to question number seven on the anti-arson application voids the policy to Joanne Risha

------

2. The certification on the anti-arson application provides:

"I (we) certify that all information contained herein is true and correct to the best of my (our) knowledge and belief. I (we) acknowledge that this statement is signed under the pains and penalties of perjury and any material false statement contained herein is punishable pursuant to 18 Pa.C.S. §4904(b). I (we) agree that this application shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstance shall be deemed grounds to void any policy issued. I (we) agree to notify the insurer in writing of any change in the information contained in this application (Part I and Part II) within 60 days."

as well. Joanne Risha, a named insured on the policy, argues to the contrary that defendant's motion for summary judgment to her breach of contract claim must fail because defendant has no basis or grounds upon which to void the policy to her. Based on the facts now before us, we agree.

The issue with regard to plaintiff Joanne Risha's breach of contract claim is whether or not, pursuant to the language of the policy, she is prohibited from obtaining benefits of the policy since her husband, Jesse Risha, made a material misrepresentation on the anti-arson application. Joanne Risha, although a named insured and a named applicant on the anti-arson application, did not sign said application and argues that the policy cannot therefore be void as to her.

The issue, whether an innocent co-insured is precluded from recovering under a policy, has been addressed by our Superior Court in both *McAllister v. Millville Mutual Insurance Company*, 433 Pa. Super. 330, 640 A.2d 1283 (1994), *allocatur denied*, 539 Pa. 653, 651 A.2d 540 (1994), and in *Kundahl v. Erie Insurance Group*, 703 A.2d 542 (Pa. Super. 1997). In *McAllister*,[3] the Su-

---

3. *McAllister* involved three brothers who were issued a joint fire insurance policy. The insured dwelling was destroyed by a fire set by one of the brothers. The policy contained provisions that the insurer would not cover a loss resulting from neglect from "any insured" and intentional acts by "an insured." The policy also contained language stating that "each person . . . is a separate insured under this policy. . . ." When looking at this provision in conjunction with the exclusionary clauses, the trial court found the policy to be ambiguous as to whether their obligations were joint or several and allowed the innocent brothers to recover. However, the Superior Court reversed find-

perior Court explained that "the issue is to be resolved by determining whether the policy treats each insured as jointly or severally covered; the distinction being policies offering joint coverage impose a duty on any policyholder to be responsible for the acts of another policyholder, whereas several coverage covers each insured irrespective of the actions of their co-insureds." See *Kundahl v. Erie Insurance Group*, 703 A.2d 542 (Pa. Super. 1997).[4] Thus, if the parties' interests in the policy are joint, then the innocent co-insured is denied coverage if the actions of any insured would preclude coverage. *Id.* If, however, the parties' interests are several, an innocent co-insured cannot be denied coverage as a result of the actions of another insured. *Id.* In making this determination, courts must review the specific policies at issue and determine whether the policies unequivocally exclude coverage for innocent co-insureds:

---

ing the terms "any insured" and "an insured" to clearly indicate that the obligations were joint.

4. *Kundahl* involved a husband and wife who were co-insureds on a homeowners insurance policy and auto insurance policy. Husband intentionally set fire to the home and was later convicted of three counts of arson. After examining the policies using the standards as explained in *McAllister*, the Superior Court found that the language contained in the homeowner's policy specifically precluded coverage of loss where the intentional or negligent acts by "anyone we protect" caused the loss. The court explained that a loss caused by "anyone we protect" unequivocally evinces joint responsibility, since the term "anyone" is naturally inclusive as opposed to exclusive. Therefore, if any one [insured] violates the policy, coverage must be denied to all insureds. The court found that the automobile policy likewise unequivocally imposed joint obligations on its insureds. Because the policies imposed joint obligations, the court found that acts by one insured precluded coverage for all other insureds. Wife was therefore denied recovery.

"If, after an examination of the policy, the court still cannot determine whether the interests and obligations of the named insureds are joint or several—*e.g.,* the exclusions do *not* unequivocally exclude coverage for innocent insureds—then the court must interpret the ambiguity in favor of the insureds and find the obligations of the insureds under that particular exclusion to be *several* or *separate.* Under these circumstances, therefore, an innocent co-insured would not be precluded from recovering his or her share of the proceeds under the policy. . . .

"Conversely, if the language of the policy, particularly the exclusionary clause, clearly indicates that the insureds' obligations are joint, then the prohibited acts of one insured bars all others from recovering." *McAllister v. Millville Mutual Insurance Company,* 433 Pa. Super. 330, 338-39, 640 A.2d 1283, 1287-88 (1994), *allocatur denied,* 539 Pa. 653, 651 A.2d 540 (1994). (citations omitted) (emphasis in original) *Accord Spezialetti v. Pacific Employers Insurance Company,* 759 F.2d 1139 (3d Cir. 1985), *Michael Carbone Inc. v. General Accident Insurance Company,* 937 F. Supp. 413 (E.D. Pa. 1996).

Accordingly, we turn our attention to the insurance policy at issue. However, prior to doing so, we note the well-settled standards in reviewing insurance contracts.

"The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. . . . In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved. . . . However, while

reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, . . . an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which were clear and unambiguous." *McAllister v. Millville Mutual Insurance Company,* 433 Pa. Super. 330, 340, 640 A.2d 1283, 1288 (1994), *allocatur denied,* 539 Pa. 653, 651 A.2d 540 (1994). (citations omitted)

After a thorough review of the policy issued to Jesse Risha and Joanne Risha, as contained in the record, this court cannot determine with any level of certainty whether or not the interests and obligations of the named insureds are joint or several. There is no exclusion that unequivocally excludes coverage for innocent insureds. Further, the policy language does not speak to joint or several interests. Accordingly, we must interpret this ambiguity in favor of the insured and find that the obligations of the insureds are several or separate.

We again emphasize that Joanne Risha did not sign the anti-arson application despite the fact that she was a named applicant and subsequent named insured. We also point out that the language of the statute contemplates multiple applicants because it specifically provides:

"I (*we*) certify that all information contained herein is true and correct to the best of my (*our*) knowledge and belief." (emphasis added)

Accordingly, in light of our foregoing discussion, and after examining the record in a light most favorable to Joanne Risha, as the non-movant, and in consideration of the requirement to resolve any doubt in her favor, we

must deny defendant's motion for summary judgment to plaintiff Joanne Risha's breach of contract claim.

With respect to Joanne Risha's bad faith claim, defendant argues that because the policy was void ab initio, she cannot be an "insured" entitled to pursue a claim under the Pennsylvania Bad Faith Statute, 42 Pa.C.S. §8371. In light of our denial of defendant's motion for summary judgment to Joanne Risha's breach of contract claim, and the foregoing discussion regarding the same, we must also deny defendant's motion for summary judgment to Joanne Risha's bad faith claim. We believe that a genuine issue of material fact exists with regard to whether or not defendant had a reasonable basis to deny Joanne Risha's claim. Accordingly, defendant's motion for summary judgment to plaintiff Joanne Risha's bad faith claim is denied.

Having addressed defendant's motion for summary judgment to the claims as contained in the Rishas' complaint, we will not turn our attention to defendant's motion for summary judgment to plaintiff Bortz' complaint. Defendant argues that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Defendant claims that the fraud of the mortgagor, Jesse Risha, in the procurement of the policy prevented the contract from ever becoming a valid policy in favor of either the insured or the mortgagee. Therefore, there was no underlying contract upon which a separate obligation in favor of the mortgagee could be engrafted.[5]

---

5. We note that our research has revealed no Pennsylvania appellate court decision addressing the effect of rescission of a mortgagor's policy of insurance on the rights of the mortgagee under a standard mortgage clause. However, although of no precedential value whatso-

The fundamental flaw with defendant's position is that it fails to recognize that a mortgagee and a mortgagor hold two separate agreements with the insurance company. It is well settled in Pennsylvania that a standard mortgage clause in a policy creates a *separate, distinct,* and *independent* contract of insurance in favor of the mortgagee. See *World of Tires Inc. v. American Insurance Company,* 360 Pa. Super. 514, 520 A.2d 1388 (1987), *allocatur denied,* 516 Pa. 623, 532 A.2d 20 (1987); *Guarantee Trust and Safe Deposit Company of Shamokin v. Home Mutual Fire Insurance Company of Broome County, New York,* 180 Pa. Super. 1, 117 A.2d 824 (1955); *Satchell v. Insurance Placement Facility of Pennsylvania,* 241 Pa. Super. 287, 361 A.2d 375 (1976).

A fire policy with a mortgage clause is, in effect, two contracts, one agreeing to indemnify the owner for loss of property, and a second insuring a creditor's security for his debt. *Taylor v. Seckinger,* 199 Pa. Super. 262, 184 A.2d 317 (1962). A mortgagor owner, by act or failure to act, cannot nullify or decrease the amount of protection which policies afford the mortgagee, and the policy provides the same benefit to mortgagee as if it had taken out a separate policy. *Guarantee Trust and Safe Deposit Company of Shamokin v. Home Mutual Fire Insurance*

---

ever and not controlling in any way on this court, at least two federal courts interpreting Pennsylvania law have determined that despite the fact that the plaintiffs' policies of fire insurance were void in each case based on material misrepresentations of the insured, the insurers were still liable to the mortgagees based on the standard mortgage clause contained in each policy. See *Peer v. Minnesota Mutual Fire and Casualty Company,* 1995 WL 141899 (E.D. Pa.); *Lavin v. Fireman's Insurance Company of Newark, New Jersey,* 1993 WL 436028 (E.D. Pa.).

*Company of Broome County, New York,* 180 Pa. Super. 1, 117 A.2d 824 (1955).

Additionally, "Under a standard mortgage clause . . . the agreement of the company being separate and divisible from that of the mortgagor, the mortgagee cannot be affected by any act or default of the mortgagor and any breach of the policy terms and conditions committed by the mortgagor is no defense to an action by the mortgagee." 5A Appleman, Insurance Law and Practices, §3401.

The mortgage clause in the policy at hand provides:

"Loss, if any, under this policy shall be payable to the aforesaid as mortgagee (or trustee) . . . and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property."

In light of the foregoing, we believe that defendant's argument must fail for several reasons. First, as previously stated, we believe that the fundamental flaw with defendant's position is that the courts of this Commonwealth have long held that the mortgagee holds a separate, independent, and distinct contract of insurance as if it had taken out a separate policy. Defendant's position that the mortgagee's interest is dependent upon or derivative of the mortgagor's interest, in our opinion, is simply an inaccurate interpretation of the laws of this Commonwealth.

Second, we believe that defendant's argument fails because it implies that mortgagees should be required to procure two policies of insurance, one insuring their in-

terest as mortgagee, and another providing protection against the possibility of fraud on the part of the mortgagor in procuring the policy. We do not believe that this is the result our legislature intended in adopting the Anti-Arson Application Law.

Additionally, we note that Bortz is an innocent third party who in no way participated in the fraud perpetrated by Jesse Risha, and believe that any responsibility for ensuring the accuracy of the mortgagor's representations as contained on the anti-arson application lies with the insurer who issued the policy and not with the mortgagee.

Accordingly, in consideration of our foregoing discussion, and after examining the record in a light most favorable to Bortz as the non-movant, and resolving all doubt in his favor, we Deny defendant's motion for summary judgment to Bortz' breach of contract claim.

Finally, defendant argues that it is entitled to judgment as a matter of law to Bortz' bad faith claim. We disagree. We believe that there are genuine issues of material fact regarding whether or not defendant had a reasonable basis to deny Bortz' claim. We, therefore, Deny defendant's motion for summary judgment to Bortz' bad faith claim.

In sum we hold: (1) defendant's motion for summary judgment to plaintiff Jesse Risha's breach of contract claim and bad faith claim pursuant to 42 Pa. C.S. §8371 is Granted; (2) defendant's motion for summary judgment to plaintiff Joanne Risha's breach of contract claim and bad faith claim are Denied; (3) defendant's motion for summary judgment to plaintiff Bortz' breach of contract claim and bad faith claim are Denied.

## ORDER

And now May 1, 2001, in consideration of the motions for summary judgment filed by defendant, Farmers Fire Insurance Company, and upon further consideration of the record, applicable law, briefs, arguments, and submissions of counsel, it is hereby ordered and decreed that defendant's motion for summary judgment to plaintiff Jesse Risha's breach of contract and bad faith claims are granted, and defendant's motion for summary judgment to the claims of plaintiffs Joanne Risha and Bortz Corporation are denied.